UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

PATRICIA G. SWINEY )
)
V. ) NO. 2:15-CV-224
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's claim for Disability Insurance Benefits under the Social Security Act was administratively denied by the Commissioner following a hearing before an Administrative Law Judge ["ALJ"]. This action is for judicial review of the Commissioner's adverse decision. Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Docs. 13 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor

resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 63 years of age at the time of the adverse hearing decision and is now 65. At all times relevant to this decision she has been a "person of advanced age" under the regulations. *See*, 20 CFR Pt. 404 Subpt. P, App.2 Rule 202.00(f). She has a high school education. The ALJ found that the plaintiff could return to her past relevant work as a "customer service clerk." (Tr. 16). The requirements of that job are at the heart of the dispute in this case and will be discussed further on in this report and recommendation.

The plaintiff's medical history, which is rather sparse, is summarized in the Commissioner's brief [Doc. 16] as follows:

> On April 2, 2013, Plaintiff visited Marianne E. Filka, M.D., for a physical examination in connection with her application for disability (Tr. 190-93). Plaintiff stated that she was not taking any prescribed pain medication and occasionally took over the counter Advil for pain (Tr. 190). A physical examination revealed osteoarthritic changes in Plaintiff's fine finger joints (Tr. 193). She had a full range of motion throughout all joints, and normal and symmetric strength in her upper and lower extremities except handgrip strength, which was slightly decreased from a "5/5" to a "5-/5" (Tr. 193). Her thumb-index pinch was "5/5" and her fine and gross manipulative skills appeared normal (Tr. 193). She had normal sensation, and her muscle mass appeared to be normal with

2

no atrophy or hypertrophy (Tr. 193). She had some tenderness in the joints of her hands and fingers but the rest of her joints were nontender (Tr. 193). Plaintiff did not have any soft tissue tenderness, red, hot, swollen joints or joint effusion (Tr. 193).[1]

Plaintiff's gait was mildly antalgic and she used a cane in her right hand to lightly tap the surface of the floor as she walked (Tr. 193). Dr. Filka noted that Plaintiff appeared to be using the cane for balance (Tr. 193). Plaintiff could stand on one leg, briefly stand on her toes, and partially squat (Tr. 193). There was no evidence of difficulty climbing on and off the examination table, or changing from sitting to lying, lying to sitting, or sitting to standing and bending (Tr. 193). She had no tenderness in her cervical or lumbar spine, but some tenderness in the soft tissues of the mid thoracic area adjacent to her spine (Tr. 193). She had negative sacral notch tenderness and negative straight leg raises (Tr. 193). Plaintiff's cervical spine range of motion was normal for extension and flexion with 40 degrees of lateral bending and 60 degrees of rotation (Tr. 193). In the lumbar spine, Plaintiff had 90 degrees of forward flexion with normal extension, lateral bending, and rotation (Tr. 193). X-rays of Plaintiff's lumbosacral spine showed transitional L5 or S1 and a mild reduction in the curvature of her spine (Tr. 187). X-rays of her left knee showed mild degenerative changes (Tr. 187).

Dr. Filka opined that Plaintiff could lift, push, pull, or carry 20 pounds occasionally and 10 pounds frequently (Tr. 194). She indicated that Plaintiff would need to use a cane for long distance walking and uneven surfaces, and she should avoid repetitive squatting, stooping, kneeling, crouching, or crawling (Tr. 194). Dr. Filka state that Plaintiff should be allowed to alternate her position sitting, standing, walking as needed for comfort of her pain, and she should avoid operating heavy vibrating equipment or climbing ladders or scaffolding (Tr. 194). Due to her chronic thumb pain, Plaintiff should also avoid any repetitive forceful gripping (Tr. 194).

One year later, in April 2014, Plaintiff visited Jason A. French, M.D., at Wellmont Medical Associates to transition her care and evaluate her complaints of joint pain (Tr. 202). She reported a 30-year history of arthritis with pain in her hips, back, legs, knees, fingers, and neck (Tr. 202, 204). She stated that getting in and out of a car and climbing stairs aggravated her arthritis (Tr. 204). She brought a letter from her lawyer requesting a functional capacity questionnaire and a handwritten note explaining her difficulties opening a jar, shopping for groceries, and laying comfortably at night (Tr. 204). She was not taking any medication for her pain (Tr. 204).

Upon examination, Plaintiff had a normal range of motion in her joints

---

[1] The Court notes that Dr. Filka also reported that the plaintiff had "Heberden and Bouchard's nodes present" in her fine finger joints (Tr. 193). Heberden's nodes are found on the finger joints closest to the fingernail, while Bouchard's nodes form on the middle joint of the finger. These bony bumps are signs of osteoarthritis, and the ALJ noted their presence in his recitation of Dr. Filka's exam findings (Tr. 13).

3

(Tr. 206). She had some pain in her hips with motion, crepitus in her knees, and nodes in the joints of her hands (Tr. 206). She had normal reflexes and an antalgic gait (Tr. 206). A rheumatoid factor test was negative (Tr. 234). X-rays of Plaintiff's feet showed minimal plantar heel spurs and slight soft tissue prominence about the great toe on both feet with no fracture or frank arthritic changes (Tr. osteoarthritis (Tr. 199, 208). X-rays of her hips showed marked osteoarthritic changes on the left and moderate to marked osteoarthritic changes on the right (Tr. 200, 209). X-rays of Plaintiff's lumbar spine showed osteopenia, mild relative degenerative changes primarily related to degenerative disc disease, and degenerative facet changes at L4/L5 (Tr. 200, 210). X-rays of her cervical spine showed mild to moderate multilevel degenerative changes and straightening of the cervical curvature likely due to muscle spasm or positioning (Tr. 201, 210). Dr. French stated that he did not feel comfortable completing the paperwork from Plaintiff's attorney (Tr. 207). He gave Plaintiff a sample of Limbrel to try for a few weeks and recommended wrist bracing or elbow wrap for her nighttime hand numbness (Tr. 207).

[Doc. 16, pgs. 3-5].

The Court notes that there were two medical assessments tendered by State Agency physicians who examined the entire medical record, limited as it was to the report of Dr. Filka. The first, dated May 1, 2013, was by Dr. Roslynn Webb. Dr. Webb opined that the plaintiff was essentially capable of medium work, and could stand or walk for 6 hours and sit for 6 hours in an 8-hour workday, and could frequently perform all postural activities except for climbing ladders, ropes or scaffolds. (Tr. 46-47). Dr. Webb specifically opined that "Dr. Filka is overly restrictive and is not commensurate with the sum of the evidence in file noting essential normal physical exam w/o deficit and independent ADLs [activities of daily living]. As such, this MSO [Medical Source Statement] is not afforded great weight." (Tr. 48). The second, by Dr. Frank Pennington dated July 4, 2013, was identical (Tr. 58-60).

On June 19, 2014, the ALJ conducted the plaintiff's administrative hearing. The

4

ALJ called Ms. Kathy Sanders, a vocational expert ["VE"]. He first asked Ms. Sanders to identify plaintiff's past relevant work. Ms. Sanders stated that it was as a "customer service clerk, DOT [*Dictionary of Occupational Titles*] 239.137.014." They agreed that this was the only job that qualified as past relevant work under the regulations. (Tr. 37).

The ALJ then asked the VE to assume a person of plaintiff's age, education and vocational experience, who was limited to "[s]edentary exertion, no climbing of ladders, ropes and scaffolds. No concentrated exposure to vibration. In terms of postural limitations other than the climbing of ladders, ropes and scaffolds, I'd say occasional climbing of ramps and stairs, stooping, kneeling and crouching. I'm going to limit handling and fingering to a frequent basis due to the arthritis of the fingers. If limited in that fashion, would she be capable of performing past relevant work?" (Tr. 38). Ms. Sanders responded by saying "according to her testimony, she testifies that her keyboarding was pretty continuous. I'd say no." (Tr. 38). Thus, the VE opined that the plaintiff could not perform her past job as a customer service clerk as she herself actually performed it.

The ALJ then asked "[w]hat about the Dictionary of Occupational Titles, as it describes the job, how much handling and fingering?" Ms. Sanders replied "[h]andling and fingering was frequent in the DOT." The ALJ then asked "what about as it is generally performed, if limited in that fashion, would she be capable of performing past relevant work?" Ms. Sanders replied "[w]ell, as generally performed, people are kind of alternating on tasks and the – including breaks, yes, it could be done. But—yes." (Tr.

5

38-39).

The ALJ then asked the VE what impact Dr. Filka's requirement that plaintiff be allowed to freely alternate between sitting and standing would have on her ability to perform her past relevant work as generally performed and described in the DOT. Ms. Sanders replied "[t]hat would eliminate the job because in the sedentary occupational base, one needs to remain on the job station so standing and walking as needed would take someone away from their occupational station." When asked by the ALJ if there would be any other jobs such a person could perform, Ms. Sanders stated there would not be any other jobs. (Tr. 39).

Plaintiff's counsel asked the VE if the "more constant use of the hands" plaintiff described in her testimony about her former job was "common in that kind of position." Ms. Sanders stated that the position "was commonly performed as the DOT describes it." (Tr. 39).

On June 27, 2014, the ALJ rendered his hearing decision. He first described the 5 step sequential evaluation process. At Step Four, he stated that he was required, under 20 CFR § 404.1520(f), to determine if the plaintiff has the residual functional capacity ["RFC"] to perform the requirements of her past relevant work. He stated that "[t]he term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years.…" (Tr. 10-11).

He then found that the plaintiff's insured status for obtaining Disability Insurance

Benefits would expire on December 31, 2015. The ALJ found that the plaintiff suffered from the severe impairment of osteoarthritis. He then found that she did not have an impairment which met or equaled any of the Listings of Impairments in the regulations. (Tr. 12).

The ALJ then found that the plaintiff had the RFC to perform sedentary work with the same limitations included in his question to the VE described above. Particularly, he noted that handling and fingering were limited to a frequent basis (Tr. 12). He then discussed his duty to determine if the plaintiff had an impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 13). If he found such an impairment present, he "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." In that regard, he noted that if the objective medical evidence did not directly substantiate the limitations of which the plaintiff complained, he would have to make a finding as to whether her subjective complaints were indeed credible. (Tr. 13).

He then discussed the medical evidence, beginning with a thorough analysis of the consultative exam performed by Dr. Filka. He noted that plaintiff told Dr. Filka she took Advil occasionally for pain. The ALJ pointed out that plaintiff complained of "red, hot, swelled finger joints." In fact, Dr. Filka found no "red, hot swelled finger joints." Instead, she found only some tenderness in the CMC joints and MCP joints, and the

7

Heberden and Bouchard's nodes. He noted Dr. Filka observed plaintiff was able to change postural positions without evidence of difficulty, including in climbing up and down off the exam table. He pointed out that Dr. Filka found plaintiff had 5/5 symmetric strength in both upper and lower extremities, except for handgrip strength which she found to be only 5-/5. He also noted the plaintiff's tenderness in the mid thoracic area adjacent to the spine. He then described Dr. Filka's assessment of plaintiff's capabilities, including her need for a sit/stand option as needed for comfort. (Tr. 13-14).

The ALJ discussed the exam and findings of Dr. French in 2014. He mentioned Dr. French noting the deformity of plaintiff's hands with the Heberden and Bouchard's nodes, as well as the plaintiff's difficulties with her back. (Tr. 14).

The ALJ then stated that he found the plaintiff was not entirely credible. Even though she had a very serious and functionally limiting condition, he found "the evidence fails to substantiate the claimant's allegations of total disability." (Tr. 14). He noted that the plaintiff had no documented treatment for her osteoarthritis even when she still had insurance. He stated that "the objective evidence reflects only minimal findings and does not corroborate the claimant's subjective assertions." (Tr. 14-15). The ALJ pointed out that the plaintiff stated her daily activities included caring for most of her personal needs, feeding her cat and dog, preparing simple and sometimes complete meals daily, and performing household chores such as doing laundry, vacuuming, cleaning the bathroom gardening and shopping. (Tr. 15).

He then discussed the opinion evidence. He gave "some weight" to Dr. Filka. He

obviously disagreed with Dr. Filka's opinion that plaintiff could meet the lifting requirements of light work. However, he also stated that "there is no persuasive evidence that the claimant should be allowed to alternate her position sitting, standing and walking as needed for comfort of her pain." (Tr. 15). He based this on Dr. Filka's description of plaintiff's ability to change positions in the exam without any apparent difficulties. Also, he noted that the imaging studies would not suggest a need for this. He concurred with Dr. Filka in all other respects, and accordingly limited plaintiff's climbing and the like (Tr. 15).

He then stated he gave little weight to the opinions of the State Agency physicians, Drs. Webb and Pennington, that the plaintiff could perform medium work. He mentioned as his reason for doing this "subsequent objective evidence and the claimant's subjective complaints.…" (Tr. 15). He also stated that he was limiting the plaintiff to frequent handling and fingering. *Id*.

The ALJ then stated that the plaintiff was capable of performing her past relevant work as a customer service clerk at the fourth step of the sequential evaluation process. Accordingly, he found that she was not disabled.

From all of the foregoing, it is clear that there are no jobs the plaintiff can perform with the RFC found by the ALJ other than the past job as a customer service clerk as it is generally performed, and not as plaintiff herself performed it. It is also clear that there is no evidence of any treatment, or even examination, before the plaintiff applied for benefits and was examined by Dr. Filka at the Commissioner's request on April 2, 2013.

It is also clear that the plaintiff has serious issues with arthritis in her hands, and that the extent of the limitation imposed upon her ability to handle objects and use her fingers is in serious dispute.

Plaintiff raises two general assignments of error to attempt to show that the ALJ's Step Four finding that the plaintiff cannot return to her past relevant work is not supported by substantial evidence. First, she asserts that the ALJ failed to properly address her past relevant work. Second, she asserts that the ALJ did not properly evaluate the opinion of Dr. Filka.

Regarding Dr. Filka, plaintiff argues that the ALJ erred in not giving weight to that portion of Dr. Filka's opinion that plaintiff required a sit/stand option for comfort. As plaintiff points out, the VE testified in response to questioning by the ALJ that the additional requirement of the sit/stand option being added to plaintiff's RFC would eliminate the job of customer service clerk, rendering her disabled as a matter of law.

Dr. Filka was not a treating physician, and the ALJ is not required to undergo the more rigorous explanation regarding the weight attached to an opinion from a non-treating examining source that is required in the case of a treating physician. *See, Norris v. Commissioner of Soc. Sec.,* 461 F. App'x 433, 439 (6th Cir. 2012), which held that "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources…." In *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), based on 20 C.F.R. § 404.1527(d), the Sixth Circuit stated that in evaluating a non-treating examining source, "the ALJ should consider factors including the length and

10

Case 2:15-cv-00224-JRG-MCLC   Document 17   Filed 07/05/16   Page 10 of 16   PageID #: 327

nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Id*. at 514. The case held that the ALJ was justified in accepting the opinion of a State Agency psychologist over a consultative examiner, provided the rationale offered for doing so was adequate. There, the Court found that the ALJ "considered relevant factors" when "the ALJ found that (the consultative examiner's) conclusion was not fully supported by her own materials or the record as a whole." *Id*.

The plaintiff points out that Dr. Filka's opinion is the only one from an examining source. Indeed, the examination by Dr. Filka and the examination by Dr. French, who offered no assessment, are the universe of doctors who examined the plaintiff. However, there are the two reports of the State Agency physicians, both of whom opined from looking at Dr. Filka's exam report, objective findings, and x-rays, that the plaintiff was capable of medium work. The ALJ did not assign great weight to their opinions, believing that the plaintiff was much more impaired than they suggest.[2] However, those opinions are still in the record and provide support for the ALJ in his RFC finding and the weight accorded to Dr. Filka. Also, the ALJ did give reasons for not accepting Dr. Filka's finding regarding plaintiff's need to alternate between sitting and standing and walking. He stated there was "no persuasive evidence that the claimant should be

---

[2] For that matter, he found the plaintiff more restricted in what she could lift and carry than Dr. Filka did.

11

allowed to alternate her position sitting, standing, and walking as needed for comfort of [sic] her pain. Dr. Filka's examination showed she was able to change positions without any noted difficulties, and imaging studies do not support this limitation." (Tr. 15). Dr. Filka herself made x-rays of the plaintiff's lumbosacral spine. She noted "a significantly transitional L5," but only mild conditions otherwise. X-rays ordered by Dr. French in April 2014 showed only mild degenerative changes in plaintiff's lumbar spine (Tr. 200), and mild to moderate abnormalities elsewhere (Tr. 200-201).

The ALJ was confronted with a plaintiff with no treatment history for the condition she claims has been the basis of her disability since 2010. The file contains State Agency physicians' reports that opined Dr. Filka's restrictions were not supported by her own examination records. The ALJ, as finder of fact, also did not find Dr. Filka's restriction supported by her notes. The ALJ stated his reasons as well as the ALJ did in *Ealy, supra*. The Court finds that the ALJ did not err in his discussion of Dr. Filka's opinion or in the weight he assigned to its various parts.

Plaintiff also argues that the ALJ failed to properly address the plaintiff's past relevant work. The ALJ found, with respect to plaintiff's past work as a customer service clerk, that she was "able to perform it as actually and generally performed." (Tr. 16). Plaintiff testified the job she actually had required her to constantly use her fingers for typing in dealing with the customers' accounts. (Tr. 28). The vocational expert agreed that this was how plaintiff had described her actual job and that if she were limited to only frequent (as opposed to constant) fingering and handling as found by the ALJ, she

12

could not do the job she had done in the past. Thus, plaintiff asserts, the ALJ erred in finding she could perform her former job as she actually performed it. The Court finds the plaintiff to be correct as to this point. The ALJ recognized at the hearing, while examining the VE, that his RFC finding requiring only frequent fingering and handling was incompatible with plaintiff's past job as she actually performed it. Thus, he asked the VE whether a person with that RFC could do the job as it is generally performed (Tr. 38). She opined that the person could (Tr. 39).

Thus, there is no substantial evidence that the plaintiff could perform her past relevant work as she *actually* performed it. However, a Step Four finding that a person can return to their past relevant work can also be made on the basis that they can do the job as it is *generally* performed in the national economy. 20 C.F.R. § 404.1560(b)(2). This subsection assumes that a vocational expert will be used in this regard. Here, when asked if the plaintiff could perform the customer service clerk as set out in the DOT with only frequent fingering and handling, the VE testified that she could.

However, as plaintiff points out, the VE referred to the customer service clerk job referred to in DOT 239.137-014. Plaintiff shows that DOT 239.137-014, found at 1991 WL 672215, is entitled "Customer Service Representative Supervisor." Plaintiff's job duties never included supervising other employees. That job does not require frequent fingering and handling, but only occasional fingering and handling. Undoubtedly, it is a less physically demanding job for someone with arthritic hands than the job plaintiff actually performed.

13

However, the DOT also contains the job entitled "Customer Service Representative," DOT 239.362-014, which is found at 1991 WL 672224. The only difference in the DOT number is "362" instead of "137" found regarding the supervisor job. DOT 239.362-014 does not require supervising other employees. If the two jobs are compared, the only relevant increase in physical ability required of a Customer Service Representative is frequent "fingering," as opposed to the "occasional" fingering required by the Customer Service Representative Supervisor job. The RFC found by the ALJ requires no more than frequent fingering.

This job is within the plaintiff's RFC as found by the ALJ. Also, the Court believes that this is the job in the DOT to which the VE was actually referring, because of her statement that "handling and fingering was frequent in the DOT." That is true of DOT 239.362-014, but not DOT 239.137-14, which only required occasional fingering. The subtle difference in the numbering scheme used by the DOT certainly can lead to confusion. However, in the end, with the RFC found by the ALJ, the VE's testimony constitutes substantial evidence to support the Step Four finding that the plaintiff can return to her past relevant work as it is generally performed in the national economy.

Plaintiff also asserts that the ALJ did not follow Social Security Ruling ["SSR"] 82-62. As summarized by plaintiff, this SSR requires, when an ALJ finds a person can return to their past relevant work at Step Four, a finding of fact as to the individual's RFC, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the individual's RFC would permit a return to his or her past job

14

or occupation. In this case, the ALJ clearly made an RFC finding. Also, the only demand of the past job as described in DOT 239.137-014 in issue is that it requires no more than frequent fingering and handling. The ALJ recognized this requirement and found that the plaintiff met it. He also made the ultimate finding of fact that her RFC would allow her to perform that job. Although the plaintiff may dispute the RFC finding, it supports the ALJ's finding that she could do this job.

Plaintiff also argues that the ALJ violated SSR 00-04p, which requires him in cases whether there is a conflict between the VE and DOT, to "elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Here, while there was some confusion caused by the VE using the wrong DOT number for the past relevant job she was talking about in her testimony, there was no actual conflict between her testimony and the DOT. No further explanation was necessary.

The Court understands that the plaintiff is severely impaired by her osteoarthritis and restricted to the point that she would be disabled at her age and work background if she could not perform her past relevant work. However, the Court detects nothing in the record to suggest that the ALJ was trying to see that the plaintiff be denied benefits or to cut corners in his analysis. He simply followed the evidence where it led and made the finding that the law required at that point. The job the VE described using the wrong number exists. The ALJ's RFC finding, and his ultimate determination, are supported by substantial evidence. Therefore, it is respectfully recommended that the plaintiff's

15

Motion for Summary Judgment [Doc. 13] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be GRANTED.³

Respectfully submitted,

      s/ Clifton L. Corker
    United States Magistrate Judge

---

³Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).